**BRODSKY & SMITH, LLC**
Evan J. Smith, Esquire
Ryan P. Cardona, Esquire
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (610) 667-9029
esmith@brodskysmith.com
rcardona@brodskysmith.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIT RAHEJA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIVONGO HEALTH, INC., GLEN TULLMAN, ZANE BURKE, CHRIS BISCHOFF, KAREN L. DANIEL, SANDRA FENWICK, PHILIP D. GREEN, HEMANT TANEJA, TELADOC HOLDINGS INC., and TEMPRANILLO MERGER SUB, INC.,<br><br>Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Amit Raheja ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Livongo Health, Inc. ("Livongo" or the "Company"), against Livongo, the Company's Board of Directors (the "Board" or the "Individual Defendants"), Teladoc Health, Inc. ("Parent"), and its affiliates Tempranillo Merger Sub, Inc. (collectively with Parent, "Teladoc") (Teladoc, the Individual Defendants and the Company are collectively referred to herein as the

"Defendants") for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and for breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to Teladoc as a result of an unfair process for an unfair price, and to enjoin the stockholder vote on a proposed mixed cash and stock transaction valued at approximately $18.5 billion (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an August 5, 2020, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, Livongo will become an indirect wholly-owned subsidiary of Teladoc, and Livongo shareholders will receive a mix of cash and stock totaling $4.24 in cash and 0.5920 shares of Teladoc common stock for each share of Livongo common stock they own (as well as a special cash dividend equal to $7.09 per share).   At the time of the signing of the Merger Agreement, Teladoc shares were trading for $202.01, resulting in an implied valuation of Livongo shares at $130.92 per share.

3.      Thereafter, on September 3, 2020, Teladoc filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The dubious nature of the Proposed Transaction is laid bare considering the lack of protections afforded Livongo stockholders against fluctuations in Teladoc's share price.  Here, a portion of the Merger Consideration includes Teladoc common stock exchanged at a fixed exchange ratio of 0.5920 which means that Livongo stockholders will receive 0.5920 shares of Teladoc common stock as a portion of the Merger Consideration in exchange for each of their Livongo shares, regardless of Teladoc's stock price at the close of the transaction.   Thus, the consideration payable to Livongo's stockholders is not insulated from fluctuations in Teladoc's stock price, and stockholders are left in the precarious position of not knowing whether the consideration payable to them will decline further.

5.      In addition, the Proposed Transaction is unfair and undervalued for a number of reasons.  Significantly, the Registration Statement describes an insufficient sales process in which

the Board rushed through an inadequate "sales process" in which the only end goal was a sale to Teladoc.

6.     Such a sales process, or lack thereof, clearly indicates that the only end-goal acceptable to the Defendants was an acquisition of Livongo by Teladoc.

7.     Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.  Moreover, certain Directors and other insiders will also be the recipients of lucrative change-in-control agreements, triggered upon the termination of their employment as a consequence of the consummation of the Proposed Transaction.

8.     In violation of Federal Securities laws and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Registration Statement on September 3, 2020 with SEC in an effort to solicit stockholders to vote their Livongo shares in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Livongo stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction, and is thus in breach of the Defendants fiduciary duties.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Livongo and Teladoc, provided by Livongo and Teladoc to the Company's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley") and to Teladoc's financial advisor Lazard Frères & Co. LLC ("Lazard") for use in their financial analyses; (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisor, Morgan Stanley; and (d) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by Teladoc's financial advisor, Lazard.

9.     In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Livongo without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Teladoc without regard for Livongo public stockholders.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Livongo stockholders.

10.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## PARTIES

11.     Plaintiff is a citizen of Hong Kong and, at all times relevant hereto, has been a Livongo stockholder.

12.     Defendant Livongo provides an integrated suite of solutions for the healthcare industry in North America. Livongo is incorporated under the laws of the State of Delaware and has its principal place of business at 150 West Evelyn Avenue, Suite 150, Mountain View, California 94041.  Shares of Livongo common stock are traded on the NasdaqGS under the symbol "LVGO."

13.     Defendant Glen Tullman ("Tullman") has been a Director of the Company at all relevant times.  In addition, Tullman is the Founder of Livongo and Chairman of the Company Board.

14.     Defendant Zane Burke ("Burke") has been a director of the Company at all relevant times.  In addition, Burke serves as the Company's Chief Executive Officer ("CEO").

15.     Defendant Chris Bischoff ("Bischoff") has been a director of the Company at all relevant times.

16.     Defendant Karen L. Daniel ("Daniel") has been a director of the Company at all relevant times.

17.     Defendant Sandra Fenwick ("Fenwick") has been a director of the Company at all relevant times.

18.     Defendant Phillip D. Green ("Green") has been a director of the Company at all relevant times.

19.     Defendant Hemant Taneja ("Taneja") has been a director of the Company at all relevant times.

20.     Defendants identified in ¶¶ 13 - 19 are collectively referred to as the "Individual Defendants."

21.     Defendant Teladoc Health, Inc. provides virtual healthcare services on a business-to-business basis in the United States and internationally.  Teladoc is a corporation organized under the laws of the State of Delaware and has its principal place of business at 2 Manhattanville Road, Suite 203, Purchase, NY 10577.  Its common stock is traded on the NasdaqGS under the ticker symbol "TDOC."

22.     Defendant Tempranillo Merger Sub, Inc. is a wholly owned subsidiaries of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

24.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Livongo has its principal place of business is located in this District, and each of the Individual Defendants, as the Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Livongo common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

27.     This action is properly maintainable as a class action because:

a.  The Class is so numerous that joinder of all members is impracticable.  As of July 31, 2020, there were more than 100 million common shares of Livongo stock outstanding.  The actual number of public stockholders of Livongo will be ascertained through discovery;

b.  There are questions of law and fact which are common to the Class, including *inter alia*, the following:

i.   Whether Defendants have violated the federal securities laws;

ii.  Whether Defendants made material misrepresentations and/or omitted material facts in the Registration Statement; and

iii. Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.  Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

28.  By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Livongo and owe the Company the duties of due care, loyalty, and good faith.

29.  By virtue of their positions as directors and/or officers of Livongo, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Livongo to engage in the practices complained of herein.

30.  Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.  act with the requisite diligence and due care that is reasonable under the circumstances;

b.  act in the best interest of the company;

c.  use reasonable means to obtain material information relating to a given action or decision;

d.   refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e.   avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.   disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

31.   In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Livongo, are obligated to refrain from:

a.   participating in any transaction where the directors' or officers' loyalties are divided;

b.   participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c.   unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

32.   Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Livongo, Plaintiff and the other public stockholders of Livongo, including their duties of loyalty, good faith, and due care.

33.   As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Livongo common stock in the Proposed Transaction.

1

2

**SUBSTANTIVE ALLEGATIONS**

***Company Background***

3   34.   Livongo provides an integrated suite of solutions for the healthcare industry in North America. The Company solutions promote health behavior change based on real-time data capture supported by intuitive devices and insights driven by data science. The Company offers a platform that provides cellular-connected devices, supplies, informed coaching, data science-enabled insights, and facilitates access to medications. Its products include Livongo for Diabetes, Livongo for Hypertension, Livongo for Prediabetes and Weight Management, and Livongo for Behavioral Health by myStrength. The Company was formerly known as EosHealth, Inc. and changed its name to Livongo Health, Inc. in 2014. Livongo Health, Inc. was incorporated in 2008 and is headquartered in Mountain View, California.

35.   The Company has shown steady financial success evidenced by its stock performance and financial data. In fact, as recently as August 4, 2020, the day before the announcement, Livongo's stock price was as high as $150.00 per share, approximately $20 more per share than the consideration in the Proposed Transaction.

36.   The Company's most recent pre-announcement 10-Q indicated sustained and solid financial performance.  For example, in a May 6, 2020 press release announcing its Fiscal 2020 Q1 financial results, Defendant Burke promoted the Company's positive financial results, "Livongo is well positioned to provide assistance to some of the most vulnerable populations during the COVID-19 pandemic - people with chronic conditions - and our remote monitoring, digitally powered and real-time personal coaching capabilities, and access to telehealth services are well suited to track vital signs of interest in maintaining the health of our Members."

37.   Defendant Burke went on to comment on a strong future outlook for Livongo, "We are pleased to announce our relationship with the Government Employees Health Association, Inc. (GEHA), to provide the Livongo for Diabetes, Hypertension, and Diabetes Prevention solutions for federal employees, retirees, and their dependents that receive GEHA medical coverage."

38.   The Company reported in its Q1 Financial Results Press Release total revenues of $68.8 million, up 115% year-over-year, driven by the continued adoption of its Applied Health

Signals platform. The Company also reported as of March 31, 2020, it had over 328,000 Diabetes members, up approximately 100% year-over-year and 1,252 Clients, up approximately 44% quarter-over quarter.

39.    Even after its impressive Q1 financial results, the Company reported even better results in Q2 as expressed in its August 5, 2020 press release on the Q2 Financial Results. The Company had total revenue of $91.9 million, up 125% year-over-year and over 410,000 enrolled Diabetes Members, up 113% year-over-year.

40.    Defendant Burke expanded on the Company's continued positive financial results, "Livongo entered 2020 with significant momentum and our strong results continued during the second quarter… Innovative employers and health plans are choosing Livongo due to our leading Consumer Directed Virtual Care model and our ability to deliver significant clinical and financial improvements through a one-to-many approach. As we experience the further adoption of virtual health and remote monitoring technologies as the new standard of care, Livongo continues to build on its leadership position."

41.    These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success by Livongo.  As a result, the Company should command a much higher consideration than the amount contained within the Proposed Transaction.

42.    Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Livongo to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

43.    As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to Teladoc.

44.    First it appears that no committee of disinterested directors was created to run the sales process.

CLASS ACTION COMPLAINT

45.     Next the Registration Statement makes no mention as to why the Livongo Board allowed the merger consideration to be composed partially of a fixed exchange ratio with no collar to protect the Company's public stockholders from fluctuations in Teladoc's price.

46.     Moreover, the Registration Statement indicates that neither the Livongo Board nor Morgan Stanley on its behalf conducted any sort of market check at all in an attempt to gauge market interest and/or in an attempt to solicit a better price for Livongo stockholders.

47.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

48.     On August 5, 2020, Livongo and Teladoc issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **PURCHASE, NY and MOUNTAIN VIEW, Calif.,** Aug. 05, 2020 (GLOBE NEWSWIRE) -- Teladoc Health (TDOC), the global leader in virtual care, and Livongo (LVGO), the leading Applied Health Signals company – today announced that they have entered into a definitive merger agreement. This merger represents a transformational opportunity to improve the delivery, access and experience of healthcare for consumers around the world. The highly complementary organizations will combine to create substantial value across the healthcare ecosystem, enabling clients everywhere to offer high quality, personalized, technology-enabled longitudinal care that improves outcomes and lowers costs across the full spectrum of health.
>
> Under the terms of the agreement, which has been unanimously approved by the Board of Directors of each company, each share of Livongo will be exchanged for 0.5920x shares of Teladoc Health plus cash consideration of $11.33 for each Livongo share, representing a value of $18.5 billion based on the closing price of Teladoc Health shares as of August 4, 2020. Upon completion of the merger, existing Teladoc Health shareholders will own approximately 58 percent and existing Livongo shareholders will own approximately 42 percent of the combined company.
>
> The combination of Teladoc Health and Livongo creates a global leader in consumer centered virtual care. The company will have expected 2020 pro forma revenue of approximately $1.3 billion, representing year over year pro forma growth of 85 percent. Demonstrating the power of the combined platform and the scalability of the data driven and virtual ethos, the combined company is expected to have pro forma Adjusted EBITDA of over $120 million for 2020.
>
> "This merger firmly establishes Teladoc Health at the forefront of the next-generation of healthcare," said Jason Gorevic, CEO of Teladoc Health. "Livongo is a world-class innovator we deeply admire and has demonstrated success

improving the lives of people living with chronic conditions. Together, we will further transform the healthcare experience from preventive care to the most complex cases, bringing 'whole person' health to consumers and greater value to our clients and shareholders as a result."

"This highly strategic combination will create the leader in consumer-centered virtual care and provides a unique opportunity to further accelerate the growth of our data-driven member platform and experience," said Glen Tullman, Livongo Founder and Executive Chairman. "By expanding the reach of Livongo's pioneering Applied Health Signals platform and building on Teladoc Health's end-to-end virtual care platform, we'll empower more people to live better and healthier lives. This transaction recognizes Livongo's significant progress and will enable Livongo shareholders to benefit from long-term upside as the combined company is positioned to serve an even larger addressable market with a truly unmatched offering."

Strategic and financial benefits of the combination

- **The combination joins two highly complementary companies to create an unmatched, comprehensive platform for virtual healthcare delivery**. By bringing together leaders in virtual health and chronic condition management, the merger combines comprehensive clinical expertise with a rich technology and data-driven experience; prevention and chronic condition management with acute and specialty care; behavior change expertise with data science; global footprint with products meeting global need; access with innovation and two of the fastest growing companies in health technology.

- **Combining clinical expertise with deeper, more comprehensive consumer health insights to deliver the highest quality care and improve outcomes**. The transaction combines Teladoc Health's broad integrated services across virtual care with Livongo's data-driven approach to providing actionable, personalized, and timely health signals to create a comprehensive virtual healthcare delivery system. The combined company's platform will feature the full range of health support – from AI+AI engine-driven "nudges" and health coaches to therapists and board-certified physicians and the world's leading specialists – available anytime, anywhere to ensure the right care is always delivered.

- **Focusing on prevention as a critical lever for reimagining healthcare delivery**. Together, Teladoc Health and Livongo will empower consumers to proactively manage their wellbeing with the help of a single, comprehensive partner across the full spectrum of health, whether they are at-risk of, or living with, chronic conditions or need acute care. By tapping into data and care anytime, anywhere, consumers will have real-time information and guidance to stay healthy and avoid the unchecked progression of illness.

CLASS ACTION COMPLAINT

- **Joining two leaders in consumer behavior change, bringing millions more consumers into virtual care and building even deeper consumer and provider relationships**.   Teladoc Health's flywheel approach to continued member engagement combined with Livongo's proven track record of using data science to build consumer trust will accelerate the combined company's development of longitudinal consumer and provider relationships.

- **Expanding Teladoc Health's portfolio and footprint with Livongo's leadership in addressing underpenetrated and underserved chronic condition populations**. Teladoc Health's global reach, including 70 million customers in the United States, and significant access to high growth segments in that market (e.g., Medicare and Medicaid) give Livongo a stronger platform to reach millions of new consumers, at risk of, or living with chronic disease.

- **Complementary cultures and operating philosophies that put a premium on health equity**. Teladoc Health has long focused on virtual care as the "great equalizer" expanding access to underserved communities facing negative social determinants of health. With Livongo's focus on chronic conditions, which disproportionately impacts underserved communities, the combined company will be positioned to make meaningful progress on addressing long-standing disparities.

- **Significant shareholder value creation and revenue acceleration opportunities**. The combined company is positioned to execute quantified opportunities to drive revenue synergies of $100 million by the end of the second year following the close, reaching $500 million on a run rate basis by 2025. These opportunities include increased cross-selling and penetration into each company's client base. They also include accelerating Livongo's international expansion through Teladoc Health's existing footprint, improving combined company member retention rates and driving more efficient enrollment. In addition to the quantified synergies, the combination offers significant unquantified synergies by enabling new care models and next generation solution opportunities. As a result of efficiencies, the combined company is expected to achieve cost synergies of $60 million by the end of the second year following the close, which can be reinvested to drive topline growth and margin expansion.

Leadership & Governance

Jason Gorevic, current CEO of Teladoc Health, will be the CEO of the combined company. Led by Teladoc Health chairman, David Snow, the newly combined Teladoc Health Board of Directors will be composed of eight members of the Teladoc Health Board and five members of the Livongo Board.

Additional Transaction Details

CLASS ACTION COMPLAINT

The transaction is expected to close by the end of Q4 2020, subject to regulatory and Teladoc Health and Livongo shareholder approvals and other customary closing conditions. The newly combined company will be called Teladoc Health and will be headquartered in Purchase, New York.

***The Inadequate Merger Consideration***

49.     The Company's financial prospects and opportunities for future growth, and synergies with Teladoc establish the inadequacy of the merger consideration.

50.     First, the compensation afforded under the Proposed Transaction to the Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements and the steep increases in the revenues of the Company in recent quarters.

51.     For example, in a July 19, 2020 Motley Fool article, the author expressed his confidence in Livongo, starting first with his response to an article titled, *Is It Too Late To Buy Livongo Health Stock?,* "But I think that the answer to the question in the headline is an unequivocal "no." It's not too late at all to buy Livongo Health stock. Sure, Livongo's share price has more than quadrupled so far this year. That's a huge move in a short period of time. It might seem inevitable that the momentum will fizzle out. However, I think there's plenty of fuel in the tank for Livongo."

52.     The Motley Fool article noted, "To be sure, the COVID-19 pandemic only accelerated a business trend that was already well under way for Livongo. However, the genie is now out of the bottle and isn't likely to back in. There's a greater awareness of the need for solutions like Livongo's digital health-management platform than ever before thanks to the pandemic. From its beginning, Livongo has primarily focused on helping individuals manage diabetes. It was and still is a winning strategy for the company. And the good news is that there's still an enormous untapped diabetes market to target**.** As of March 31, 2020, Livongo had around 328,000 members on its diabetes platform. That number will almost certainly be a good bit higher when the company reports its Q2 results on Aug. 6. Even if Livongo's membership swells considerably, though, the company will likely only be scratching the surface of the potential market. There are currently an

estimated 34 million people in the U.S. with diabetes, according to the American Diabetes Association. An additional 1.5 million people are diagnosed with diabetes each year. Livongo could double its current membership and still claim less than 2% of the addressable market."

53.     Moreover, the Company's stock has exponentially risen since March, starting at $28.50 per share and reaching as high as $150.00 per share just before the news release of the Proposed Transaction. As such, the $130 per share proposed consideration is far from a premium afforded to Livongo shareholders to compensate them for the Company's future success.

54.     Additionally, Livongo's future success is extremely likely, given the consistent positive financial results it has posted over the past several quarters.  Obviously, the opportunity to invest in such a company on the rise is a great coup for Teladoc, however it undercuts the investment of Plaintiff and all other public stockholders.

55.     Finally, the Proposed Transaction represents a significant synergistic benefit to Teladoc, which operates in the same industry as Livongo, has the ability transform the industry for the future.  Specifically, Defendant Tullman noted in the press release announcing the Proposed Transaction, "This highly strategic combination will create the leader in consumer-centered virtual care and provides a unique opportunity to further accelerate the growth of our data-driven member platform and experience."

56.     Furthermore, an August 8, 2020 Seeking Alpha article about the Proposed Transaction notes, "Livongo doesn't only have the process, but it also gets the extra data from blood tests and other tests from Teladoc, which can be implemented in the system. If a certain person is hospitalized, Livongo's AI can see what preceded the hospitalization and later it could suggest going to the hospital before an acute situation occurs. It could detect long-term trends, revealing correlations that we hadn't seen before."

57.     Clearly, while the deal will be beneficial to Teladoc it comes at great expense to Plaintiff and other public stockholders of the Company.

58.     Moreover, post-closure, Livongo stockholders will see their voting power significantly shrink as stockholders of Teladoc, with their ownership share in the surviving entity being significantly smaller than their current holdings.

59.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Teladoc at the expense of Livongo stockholders, which clearly indicates that Livongo stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

60.     The Merger Agreement contains certain provisions that unduly benefit Teladoc by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that is especially onerous and impermissible.  Notably, in the event of termination, the merger agreement requires Livongo to pay up to $562.8 million to Teladoc, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Livongo must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

61.     The Merger Agreement also contains a "[Livongo] Takeover Proposals" provision that restricts Livongo from considering alternative acquisition proposals by, *inter alia*, constraining Livongo's ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"[Livongo] Takeover Proposal"* if it constitutes or is reasonably calculated to lead to a "[Livongo *Superior Proposal*" as defined in the Merger Agreement.

62.     Moreover, the Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide Teladoc information in order to match any other offer, thus providing Teladoc access to the unsolicited bidder's financial information and giving Teladoc the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Teladoc.

63. These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

64. In addition, the Merger Agreement does not include protections to ensure that the consideration payable to shareholders will remain within a range of reasonableness. In a conventional transaction which contemplates stock of the acquiring company as a whole or part of the consideration offered in the Proposed Transaction, the parties often negotiate and implement a "floor" on the value of the consideration payable to shareholders, which establishes the lowest possible price payable. Such transactions also often include a "collar," which establishes parameters that attempt to minimize the impact of stock price fluctuations on the value of the consideration payable to shareholders. The Merger Agreement contains none of these protections. Rather, the Merger Agreement contains a *fixed* exchange ratio of 0.5920 which means that Livongo shareholders will receive 0.5920 shares of Teladoc common stock as a portion of the merger consideration for each of their shares, *regardless of Teladoc's stock price at the close of the transaction*. Thus, the consideration payable to Livongo shareholders is not insulated from fluctuations in Teladoc's stock price, and shareholders are left in the precarious position of not knowing whether the consideration payable to them will decline further.

65. Finally, entities owning approximately 35% of Livongo's outstanding stock have entered into a voting agreement, locking up said shares in favor of the Proposed Transaction and making the consummation of the merger all but a certainty.

66. Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

67. The breakdown of the benefits of the deal indicate that Livongo insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique

benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Livongo.

68.     Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for large cash pay days upon the consummation of the Proposed Transaction.  Of significant note, Livongo company insiders currently own more than 28% of the Company's outstanding common stock.

69.     Notably the while the Registration indicates the amount of Livongo stock owned by such individuals, it does not provide an accounting of how much merger consideration that they will be afforded as a result of the consummation of the Proposed Transaction.

| Name of Beneficial Owner | Common Stock Beneficially Owned Directly or Indirectly | Common Stock Acquirable Within 60 Days[1] | Total Common Stock Beneficially Owned | Percentage of Shares of Common Stock Outstanding |
|---|---|---|---|---|
| **Directors and Named Executive Officers:** | | | | |
| Glen E. Tullman | | | | |
| Held by Mr. Tullman as an individual | 848,547 | 3,634,091 | 4,482,638 | 4.28% |
| Held by entities affiliated with 7Wire Ventures[2] | 3,511,147 | — | 3,511,147 | 3.48% |
| Total | 4,359,694 | 3,634,091 | 7,993,785 | 7.64% |
| Zane Burke[3] | 936,301 | — | 936,301 | * |
| Jennifer Schneider | 10,873 | 750,701 | 761,574 | * |
| Lee Shapiro | | | | |
| Held by Mr. Shapiro as an individual | 1,128,636 | — | 1,128,636 | 1.12% |
| Held by entities affiliated with 7Wire Ventures[2] | 3,511,147 | — | 3,511,147 | 3.48% |
| Total | 4,639,783 | — | 4,639,783 | 4.59% |
| Christopher Bischoff[4] | 5,035 | — | 5,035 | * |
| Karen L. Daniel | 38,535 | — | 38,535 | * |
| Sandra Fenwick | 47,910 | — | 47,910 | * |
| Philip D. Green[5] | 111,309 | 85,415 | 196,724 | * |
| Hemant Taneja | — | — | — | * |
| Held by Mr. Taneja as an individual | 14,048 | — | 14,048 | * |
| Held by entities affiliated with General Catalyst[6] | 18,460,879 | — | 18,460,879 | 18.28% |
| Total | 18,474,927 | — | 18,474,927 | 18.29% |
| **Current Directors and Executive Officers as a Group (10 persons)** | **25,164,977** | **4,916,364** | **30,081,341** | **28.40%** |

70.     Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option, will be canceled and converted into the right to receive certain consideration according to the merger agreement, affording Company insiders disparate compensation from Plaintiff and other public Livongo stockholders as follows:

| Name | Number of Vested Livongo Stock Options (#) | Estimated Value of Vested Livongo Stock Options ($) | Number of Unvested Livongo Stock Options (#) | Estimated Value of Unvested Livongo Stock Options ($) | Estimated Total Value of Livongo Stock Options ($) |
|---|---|---|---|---|---|
| Named Executive Officers | | | | | |
| Glen E. Tullman | 3,529,878 | $431,751,778 | 660,327 | $79,892,048 | $511,643,826 |
| Zane Burke | — | — | — | — | — |
| Jennifer Schneider | 741,118 | 91,062,757 | 73,750 | 8,892,175 | 99,954,932 |
| Lee Shapiro | — | — | — | — | — |
| Other Executive Officers | | | | | |
| James Pursley | 431,782 | 52,908,086 | 93,647 | 11,364,073 | 64,272,159 |
| Non-Employee Directors | | | | | |
| Christopher Bischoff | — | — | — | — | — |
| Karen L. Daniel | — | — | — | — | — |
| Sandra Fenwick | — | — | — | — | — |
| Philip D. Green[1] | 82,288 | 10,076,780 | 17,712 | 2,164,220 | 12,241,000 |
| Hemant Taneja | — | — | — | — | — |

71.     In addition, upon the consummation of the Proposed Transaction, each outstanding Company restricted stock unit, will be canceled and converted into the right to receive certain consideration according to the merger agreement, affording Company insiders dispirate compensation from Plaintiff and other public Livongo stockholders as follows:

| Name | Number of Livongo Restricted Stock Units (#) | Estimated Value of Livongo Restricted Stock Units ($) |
|---|---|---|
| Named Executive Officers | | |
| Glen E. Tullman | 77,652 | $9,631,954 |
| Zane Burke | 77,652 | 9,631,954 |
| Jennifer Schneider | 197,304 | 24,473,588 |
| Lee Shapiro | 765,995 | 95,014,020 |
| Other Executive Officers | | |

CLASS ACTION COMPLAINT

| | | |
|---|---|---|
| James Pursley | 21,537 | 2,671,449 |
| Non-Employee Directors | | |
| Christopher Bischoff | 3,107 | 385,392 |
| Karen L. Daniel | 40,607 | 5,036,892 |
| Sandra Fenwick | 31,232 | 3,874,017 |
| Philip D. Green | 31,232 | 3,874,017 |
| Hemant Taneja | — | — |

72.     Moreover, certain employment agreements with certain Livongo executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Livongo common stockholders.  Of specific note, Defendant Tullman is entitled to cash totaling **more than $90 million** as a result of these golden parachute payments alone.

| Name | Cash ($)[2] | Equity ($)[3] | Perquisites/ Benefits[4] ($) | Tax Reimbursement[5] ($) | Total ($) |
|---|---|---|---|---|---|
| Glen E. Tullman | $1,115,625 | $89,524,002 | $6,321 | $— | $90,645,948 |
| Zane Burke | 292,500 | 85,784,699 | — | 9,570,729 | 95,647,928 |
| Jennifer Schneider | 281,250 | 33,365,763 | — | — | 33,647,013 |
| Lee Shapiro | 270,000 | 95,014,020 | — | — | 95,284,020 |
| James Pursley[1] | 150,000 | 14,035,522 | — | — | 14,185,522 |

73.     Finally, the Registration Statement indicates that Individual Defendants Bischoff, Daniel, Fenwick, Taneja, and Tullman will continue with the surviving entities as members of that entities Board of Directors, receiving further compensation not shared amongst public stockholders of Livongo.

74.     Notably, despite these post closure employment benefits to at least five Individual Defendants, the Registration Statement fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination

concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

75.     Thus, while the Proposed Transaction is not in the best interests of Livongo stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Registration Statement**

76.     On September 3, 2020, the Livongo Board and Teladoc caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation their fiduciary duties, failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

77.     Specifically, the Registration fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.   The Registration Statement fails to provide adequate reasoning as to why neither the Livongo Board nor Morgan Stanley on its behalf conducted any sort of market check at all in an attempt to gauge market interest and/or in an attempt to solicit a better price for Livongo stockholders;

b.   The Registration Statement fails to provide the reasoning as to why the Livongo Board allowed the merger consideration to be composed partially of a fixed exchange ratio with no collar to protect the Company's public stockholders from fluctuations in Teladoc's price;

c.   The Registration Statement indicates that Livongo may also pay Morgan Stanley an additional discretionary fee of up to approximately $11 million contingent upon, and subject to, the consummation of the merger; however, it provides no guidance on the circumstances under which the decision to expend

these additional funds will be made, particularly given the more than $100 million that will be paid to Morgan Stanley; and

d. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Materially Misrepresentations Concerning Livongo's Financial Projections*

78.     The Registration Statement fails to provide material information concerning financial projections provided by Livongo management and/or Teladoc Management and relied upon by Morgan Stanley and Lazard in their analyses.  The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of Morgan Stanley's fairness opinion, Morgan Stanley reviewed, "certain financial projections prepared by the managements of Livongo and Teladoc, respectively, which are collectively referred to as financial projections." Moreover, the Registration Statement indicates that in connection with the rendering of Lazard's fairness opinion, Lazard reviewed, "various financial forecasts and other data provided to Lazard by Livongo relating to the business of Livongo and adjustments thereto provided by Teladoc".

79.     Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that Livongo management provided to the Board, Morgan Stanley, and Lazard.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

80.     With respect to the "Financial Projections for Livongo – Plan A" and "Financial Projections for Livongo – Plan B" the Registration Statement fails to provide material information concerning the financial projections prepared by Livongo management.   Specifically, the Registration Statement fails to disclose material line items for the following:

      a.   Adjusted EBITDA, included the material line items of net earnings before interest, income taxes, depreciation and amortization, excludes stock-based compensation expense and related payroll taxes, amortization of intangibles, and acquisition-related expenses;

      b.   Unlevered Free Cash Flow, included the material line items of stock-based compensation expense, taxes, capital expenditures, capitalized software expenses, and adjusted for changes in net working capital.

81.     With respect to the "Teladoc Management-Adjusted Livongo Projections" the Registration Statement fails to provide material information concerning the financial projections prepared by Livongo management and adjusted by Teladoc Management.   Specifically, the Registration Statement fails to disclose material line items for the following:

      a.   Non-GAAP Gross Profit, including the material line items of gross profit, stock-based compensation expense, amortization of intangible assets, and employer payroll taxes on stock-based compensation; and

      b.   Adjusted EBITDA, including the material line items of net loss, depreciation and amortization, amortization of intangible assets, stock-based compensation expense, employer payroll taxes on stock-based compensation, acquisition-related expenses, change in fair value of contingent consideration, other income, net, and, provision for (benefit from) income taxes.

82.     The Registration Statement also provides non-GAAP financial metrics, including Adjusted EBITDA, Unlevered Free Cash Flow, and Non-GAAP Gross Profit, but fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

83.     Finally, it is clear that Morgan Stanley utilized an additional set of projections for Livongo, the "Livongo Street Case," which should have been disclosed in the Registration Statement.

84.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

85.     Without accurate projection data presented in the Registration Statement, Plaintiff and other stockholders of Livongo are unable to properly evaluate the Company's true worth, the accuracy of Morgan Stanley and Lazard's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Materially Misrepresentations Concerning Teladoc's Financial Projections*

86.     The Registration Statement fails to provide material information concerning financial projections provided by Teladoc management and relied upon by Morgan Stanley and Lazard in their analyses.  The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.  The Registration Statement indicates that in connection with the rendering of Morgan Stanley's fairness opinion, Morgan Stanley reviewed, "certain financial projections prepared by the managements of Livongo and Teladoc, respectively, which are collectively referred to as financial projections."  Moreover, the Registration Statement indicates that in connection with the rendering of Lazard's fairness opinion, Lazard reviewed, "various financial forecasts and other data provided to Lazard by Teladoc relating to the business of Teladoc, including financial projections prepared by Teladoc's management identified as "Case 1" and "Case 2", respectively".

87.     With respect to the "Teladoc Financial Projections" the Registration Statement fails to provide material information concerning the financial projections prepared by Teladoc

management. Specifically, the Registration Statement fails to disclose material line items for the following:

    a. Adjusted Gross Profit, including the material line items of, cost of revenue (exclusive of depreciation and amortization shown separately);

    b. Unlevered Free Cash Flow; and

    c. Adjusted EBITDA, including the material line items of net loss, depreciation and amortization, amortization of intangible assets, stock-based compensation expense, employer payroll taxes on stock-based compensation, acquisition-related expenses, change in fair value of contingent consideration, other income, net, and, provision for (benefit from) income taxes

88. In addition, the Registration Statement fails to indicate if these projections are the "Case 2" of the Teladoc Financial Projections, or some other set of projections.

89. With respect to the "Case 1 Forecasts of Teladoc" as calculated by Morgan Stanley and approved by Livongo, the Registration Statement fails to provide material information concerning the financial projections prepared by Teladoc management. Specifically, the Registration Statement fails to disclose material line items for the following:

    a. Adjusted EBITDA, including the material line items of, net loss, interest, taxes, depreciation, amortization, stock-based compensation, gain on sale and acquisition and integration related costs; and

    b. Unlevered Free Cash Flow, including the material line items of, stock-based compensation expense, taxes, capital expenditures, capitalized software expenses, and adjusted for changes in net working capital.

90. The Registration Statement also provides non-GAAP financial metrics, including Adjusted Gross Profit, Adjusted EBTIDA, and Unlevered Free Cash Flow, but fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

91. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were

not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

92.     Without accurate projection data presented in the Registration Statement, Plaintiff and other stockholders of Livongo are unable to properly evaluate Teladoc's true worth, which is highly relevant as the merger consideration is composed in part of Teladoc stock.  Furthermore, without such accurate projection data, Livongo stockholders are also unable to adequately evaluate the accuracy of Morgan Stanley and Lazard's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley*

93.     In the Registration Statement, Morgan Stanley describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

94.     With respect to the *Livongo Discounted Equity Value Analysis*, the Registration Statement fails to disclose the following:

   a.   The discounted equity value per share of Livongo common stock; and

   b.   The specific and assumptions used to calculate the discount rate of 9.4%, including Livongo's assumed cost of equity.

95.     With respect to the *Teladoc Discounted Equity Value Analysis*, the Registration Statement fails to disclose the following:

   a.   The discounted equity value per share of Teladoc common stock; and

   b.   The specific and assumptions used to calculate the discount rate of 7.5%, including Teladoc's assumed cost of equity

96.     With respect to the *Livongo Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

    a.  The estimates for Livongo's net operating loss and tax credit carryforwards in each of the projection sets used;

    b.  The specific inputs and assumptions used to calculate the perpetual growth rate range of 2.5% to 3.5% applied;

    c.  The specific inputs and assumptions used to calculate the discount rate range of 8.3% to 10.2% applied;

    d.  Livongo's weighted average cost of capital; and

    e.  Livongo's net debt.

97.     With respect to the *Teladoc Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

    a.  The estimates for Teladoc's net operating loss and tax credit carryforwards in each of the projection sets used;

    b.  The specific inputs and assumptions used to calculate the perpetual growth rate range of 2.5% to 3.5% applied;

    c.  The specific inputs and assumptions used to calculate the discount rate range of 7.3% to 8.2% applied;

    d.  Teladoc's weighted average cost of capital; and

    e.  Teladoc's net debt.

98.     With respect to the *Precedent Transaction Analysis*, the Registration Statement fails to disclose the following:

    a.  The specific date on which each selected precedent transaction closed;

    b.  The value of each selected precedent transaction; and

    c.  The individual multiples and metrics for each transaction.

99.     With respect to the *Analyst Price Targets Analysis*, the Registration Statement fails to disclose the following:

    a.   The individual price targets observed; and

b.  The sources for same.

100.    These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

101.    Without the omitted information identified above, Livongo's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Livongo's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Lazard*

102.    In the Registration Statement, Lazard describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

103.    With respect to the *Teladoc Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

a.  The estimated present value (as of June 20, 2020) of the stand-alone, unlevered after-tax free cash flows of Teladoc for the time period of December 31, 2020 through December 31, 2029.

b.  The specific inputs and assumptions used to calculate the perpetuity growth rate range of 3.5% to 4.5% applied;

c.  The specific inputs and assumptions used to calculate the discount rate range of 8.0% to 9.0% applied;

d.  Teladoc's weighted average cost of capital; and

e. Teladoc's net present value of tax savings from usage of net operating loss usage.

104. With respect to the *Teladoc Selected Public Companies Analysis*, the Registration Statement fails to disclose the following:

a. The specific metrics for each selected company.

105. With respect to the *Livongo Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

a. The specific inputs and assumptions used to calculate the perpetuity growth rate range of 3.5% to 4.5% applied;

b. The specific inputs and assumptions used to calculate the discount rate range of 8.0% to 9.0% applied;

c. Livongo's weighted average cost of capital; and

d. Livongo's net present value of tax savings from usage of net operating loss usage.

106. With respect to the *Livongo Selected Public Companies Analysis*, the Registration Statement fails to disclose the following:

a. The specific metrics for each selected company.

107. These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

108. Without the omitted information identified above, Livongo's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests. Moreover, without the key financial information and related disclosures, Livongo's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests. As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

**FIRST COUNT**

**Claim for Breach of Fiduciary Duties**

**(Against the Individual Defendants)**

109.   Plaintiff repeats all previous allegations as if set forth in full herein.

110.   The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

111.   By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Livongo.

112.   As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Livongo by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Livongo to its public stockholders.

113.   Indeed, Defendants have accepted an offer to sell Livongo at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

114.   Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed vote on whether to approve the Merger.

115.   The Individual Defendants dominate and control the business and corporate affairs of Livongo, and are in possession of private corporate information concerning Livongo's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Livongo which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

116.   By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

117.    As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Livongo's assets and have been and will be prevented from obtaining a fair price for their common stock.

118.    Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

119.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### (Against Livongo, Teladoc, and Merger Sub)

120.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

121.    Defendants Livongo, Teladoc, and Merger Sub all knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

122.    As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

123.    Plaintiff and the members of the Class have no adequate remedy at law.

## THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

124.    Plaintiff repeats all previous allegations as if set forth in full herein.

125.    Defendants have disseminated the Registration Statement with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

126.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

127.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

128.    The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

129.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

130.    The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

131.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote its shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## FOURTH COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

132.    Plaintiff repeats all previous allegations as if set forth in full herein.

133.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to the Company stockholders.

134.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed

the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

135.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Livongo's business, the information contained in its filings with the SEC, and its public statements.   Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

136.     The Individual Defendants acted as controlling persons of Livongo within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Livongo to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Livongo and all of its employees.  As alleged above, Livongo is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.     Enjoining the Proposed Transaction;

C.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Livongo and obtain a transaction which is in the best interests of Livongo and its stockholders;

F.      Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 11, 2020

**BRODSKY & SMITH, LLC**

By: 

Evan J. Smith, Esquire
Ryan P. Cardona, Esquire
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160
esmith@brodskysmith.com
rcardona@brodskysmith.com

CLASS ACTION COMPLAINT